KISTLER, J.,
concurring in the judgment.
ORS 162.247(3)(b) makes “passive resistance” a defense to the crime of refusing to obey the lawful order of a peace officer. The question that this case presents is what “passive resistance” means.[1] The majority holds that every *340 instance in which a defendant declines, peaceably or passively, to comply with an officer’s order constitutes “passive resistance” within the meaning of the statute. Under the majority’s reasoning, a driver who declines, for any reason or no reason, to provide his or her driver’s license to an officer during a lawful traffic stop has engaged in “passive resistance” and, as a result, has a complete defense to the charge of refusing to comply with the officer’s order.
Not only is that result counterintuitive, but the majority’s reasoning is difficult to reconcile with the text, context, and legislative history of ORS 162.247. Textually, the majority equates noncompliance with resistance, even though the latter term is logically and linguistically narrower than the former. As a matter of context, equating noncompliance with passive resistance effectively eliminates the crime of refusing to obey a lawful order of a peace officer, contrary to the principle that we should give effect to all the terms of a statute. Finally, the legislative history demonstrates that whether a person is engaging in “passive resistance” turns on two issues: (1) the nature of the resistance (whether it is peaceable or passive) and (2) the reason for the resistance (whether the person acts to express a position). The majority is legitimately concerned about interpreting “passive resistance” to avoid viewpoint discrimination, but we can and should answer that concern in a way that gives greater effect to the rest of the statute than the majority’s interpretation does.
ORS 162.247(1) prohibits interfering with a police officer and identifies two types of interference. Subsection (l)(a) prohibits “ [intentionally act[ing] in a manner that prevents, or attempts to prevent,” an officer from performing his or her lawful duties. Subsection (l)(b) prohibits “[r]efus[ing] to obey a lawful order” by the officer. One subsection prohibits certain types of actions while the other prohibits *341 certain types of inaction. The statute also sets out two exceptions to those prohibitions. It provides that “[t]his section does not apply in situations in which the person is engaging in: (a) [a]ctivity that would constitute resisting arrest under ORS 162.315; or (b) [p]assive resistance.” ORS 162.247(3).
The phrase at issue in this case—“passive resistance”— consists of two words. “Passive” defines the type of resistance, while resistance means “the act or an instance of resisting: passive or active opposition.” Webster’s Third New Int’l Dictionary 1932 (unabridged ed 2002) (defining resistance). Resistance, by definition, connotes more than the passive failure to comply with a lawful request. It connotes opposition to something. See id. (defining “resist” as “to exert oneself to counteract or defeat : strive against : OPPOSE”).” Implicit in that concept, is a requirement that a person refuse to comply with an officer’s order for some reason, not for any reason or no reason at all.
The accepted use of the phrase reinforces that conclusion. As the majority notes, the phrase “passive resistance” has become a term of art and, as such, has its own particular significance. Webster’s defines the phrase as meaning “resistance (as to a government or an occupying power) that does not resort to violence or active measures of opposition but depends mainly on techniques and acts of noncooperation.” Id. at 1651. “Passive resistance,” as that phrase has come to be used, means something more than a mere passive failure to comply with a lawful order. It denotes resistance or opposition (albeit passive and peaceable) to a government or an occupying power. To be sure, a person may decline to comply with a lawful order as a way of expressing opposition. But the reason for the noncompliance is what distinguishes passive noncompliance from passive resistance.
The context points in the same direction. As noted, ORS 162.247(3)(b) excepts “passive resistance” from the prohibition in ORS 162.247(l)(b) against refusing to comply with the lawful order of a peace officer. If the majority is correct that “passive resistance” includes all instances in which a person passively declines to comply with an officer’s lawful order, then little is left of the prohibition in ORS 162.247(l)(b). *342 It may be, as the majority notes, that a defendant can actively but peaceably refuse to comply with a lawful order. And it may follow that, as a result, the majority’s definition of “passive resistance” does not leave the prohibition in ORS 162.247(1)(b) completely devoid of content. However, the fact that the majority’s interpretation does not eviscerate the prohibition is hardly a reason for embracing it if another interpretation reasonably gives greater effect to the prohibition. After all, we should interpret the terms of a statute to give effect to all its parts. See Vsetecka v. Safeway Stores, Inc., 337 Or 502, 510, 98 P3d 1116 (2004) (stating that principle).
Moreover, if a person actively refuses to comply with an officer’s lawful order, that conduct would seem to fall more naturally within the prohibition in subsection (l)(a) against “act[ing] in a manner that prevents, or attempts to prevent,” an officer from carrying out his or her lawful duties. Put differently, if, as a result of the majority’s interpretation of passive resistance, the only content that it can give the prohibition in subsection (l)(b) consists of conduct that more naturally comes within the prohibition in subsection (l)(a), then we should think twice before accepting the majority’s interpretation.
In my view, the majority’s interpretation is also difficult to square with the legislative history. The majority opinion sets out the legislative history in pieces, partly because it relies on individual pieces of the history to rebut the parties’ various arguments. Although the majority ends up setting out almost all the relevant history by the end of its opinion, the manner in which it recounts that history may obscure rather than clarify the legislature’s intent. Accordingly, I first describe chronologically the legislative history that gave rise to the amendment at issue in this case. I then explain the inferences that I draw from that history.
In 1997, the legislature enacted what is now codified as ORS 162.247. Or Laws 1997, ch 719, § 1. As initially enacted, that statute prohibited, as it does today, interfering with a peace officer either by “act[ing] in a manner that prevents, or attempts to prevent,” the officer from carrying out his or her lawful duties or by “refus[ing] to obey a lawful *343 order” by the officer. Id. § 1(1). As initially enacted, subsection (3) of the statute set out a single exception to those two prohibitions. It provided that “ [t]his section does not apply in situations in which a peace officer is making an arrest.” Id. § 1(3). The purpose of subsection (3) was to prevent a person for being convicted twice for the same conduct—namely, to prevent the person from being convicted for resisting arrest and also for interfering with a peace officer.
Two years later, there was a concern that the exception set out in subsection (3) “ha[d] been construed a bit too broadly,” and the House Subcommittee on Criminal Law considered an amendment that narrowed the exception. Tape Recording, House Judiciary Committee, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B. The proposed amendment provided that the prohibitions in ÓRS 162.247(1) do “not apply in situations in which the person is engaging in activity that would constitute resisting arrest under ORS 162.315.” Exhibit P, House Committee on Judiciary, Subcommittee oh Criminal Law, HB 3374, May 4, 1999. Having discussed the amendment, the subcommittee voted to approve it.
After the subcommittee approved the amendment and was about to move on to another issue, Representative Bowman asked if she could raise a question about the scope of the amendment that the subcommittee had just approved. Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4,1999, Tape 178, Side B. She asked whether the amendment “change[s] current law so that—so that passive resistance or civil disobedience is now prohibited [by ORS 162.247(1)].” Id.
Both Representatives Mannix and Prozanski responded that it did not. Each of them explained that, in his view, the 1997 legislature had intended to exempt passive resistance from the prohibition against interfering with a police officer and that the 1999 amendment to subsection (3) did not eliminate that exemption. Id. Representative Mannix, the chair of the subcommittee, explained:
“We were careful, if I may, I can answer that. I was around when we were dealing with these statutes in Judiciary a few years back. We went through true civil disobedience, *344 the lying down, and tried to craft it so that if you were lying down and the officers had to pick you up, that was okay. On the other hand, if they tried to pick you up and you started swinging at them or whatever, doing something physically, we made a good record on that too, that that became at least interference if not resistance, but you had to be doing something physically to resist or to interfere, but just being passive was not—because we were trying to respect what I call the traditional civil rights passive resistance where you just say you’re protesting and will not move.”
Id. Representative Prozanski added:
“Mr. Chair, we have also when the bill [regarding interfering with a peace officer] was before the committees last time I made that a very clear record because in my community there are a lot of people that do want to have a passive resistance under the MLK approach or the Gandhi approach of just basically—just being there as a presence but not doing anything physically to a—in a way of waiving your arms or swinging stuff and that was made clear. And that’s the other reason that I wanted to make certain that this—that the law itself, the crime of interfering, would not include a passive civil disobedience protester.”
Id. In their view, the amendment that the subcommittee had just approved did not eliminate passive resistance as a defense to interfering with a peace officer. Id. Representative Bowman said that those assurances answered her concern. Id.
The colloquy among Representatives Bowman, Mannix, and Prozanski is significant for two reasons. First, Representatives Mannix and Prozanski explained that “passive resistance” consisted of two elements: responding passively (not actively) to the officer’s orders and doing so, as Representative Mannix put it, as a part of “true civil disobedience” or, as Representative Prozanski put it, “as a passive civil disobedience protester.” That is, each representative took the view that “passive resistance” turned both on the nature of the resistance (passive or peaceable) and the reason for the resistance (to express a position regarding a governmental or other policy). The reason for the resistance was as integral to the concept of “passive resistance” as the nature of the resistance. In my view, you cannot *345 read Representatives Mannix and Prozanski’s responses to Representative Bowman’s question and conclude that either person viewed the nature of the resistance (passive as opposed to active) as the sole defining element of passive resistance.
There is a second reason why the colloquy among the three representatives is significant: It turns out that Representative Bowman’s concern was well-founded. As Representative Bowman’s question recognized, by narrowing the exception in ORS 162.247(3), the subcommittee inadvertently had removed “passive resistance” as a defense to a charge of interfering with a police officer.[2] As a result, two days later, on May 6, the subcommittee amended subsection (3) again to restore “passive resistance” as a defense to that crime. Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 6, 1999, Tape 179, Side B. In explaining the need for the May 6 amendment, Representative Prozanski stated:
“Mr. Chair the [proposed amendment] basically coverts] an area that you and I had spoken about and was brought to [our] attention after we talked [about this issue] at our last hearing [on May 4]. This is where we would be holding someone accountable for interfering with a peace officer. And the intent of all this previous legislation, including resisting arrest, [was] that if someone was passively resisting they would not be, let’s say, subject to a charge of either resisting arrest and it’s always been intended that they not be subject to a charge for interfering with a peace officer.
“And this basically clarifies that if someone is passively resisting, such as in a protest situation, they would not be subject to this law. Specifically, * * * if an officer asked them *346 to stand up and be arrested, that could be interpreted as a refusal to obey a lawful order of an officer. And since this was supposed to protect the safeguards of the individuals that are peacefully, without any violence, protesting, * * * they would not be held accountable as long as it was only passive resistance.”

Id.

That explanation reflects Representative Prozanski’s conclusion that it was necessary to add engaging in “passive resistance” to engaging in “resisting arrest” to restore the defense of “passive resistance” to the charge of interfering with a peace officer.[3] Representative Prozanski’s explanation also reaffirmed the understanding of “passive resistance” that he and Representative Mannix had expressed two days earlier.[4] That is, he again made clear that passive resistance turns on both the nature of the resistance (passive or peaceable) and the reason for the resistance (to express a position regarding a governmental or other policy). In my view, the legislative history establishes that both elements must be present before noncompliance will constitute passive resistance.
The majority is not unmindful of that history. It recognizes that, “when the [1999] legislature enacted the amendments to ORS 162.247, it had in mind protecting from arrest individuals who were engaged in a peaceful political protest or some other kind of nonviolent civil disobedience.” The majority reasons, however, that “the legislative history does not suggest that the legislature intended the phrase ‘passive resistance’ to apply only in those situations.” (Emphasis in original.) In my view, the legislative history does not suggest that the legislature had anything else in *347 mind in excepting “passive resistance” from the prohibition against interfering with a peace officer. Moreover, the most natural reading of the text and context leads to the same conclusion that the legislative history does. Reading the text, context, and legislative history together, I would hold that passive resistance requires both an act (passive or peaceable noncompliance) taken for a reason (to express a position on a governmental or other policy). Passive noncompliance, by itself, is not enough.
The majority identifies another basis for not giving effect to the legislative history. It notes that our cases have held that “the fact that the legislature had a specific concern in mind in enacting legislation does not mean that the legislature necessarily intended the legislation to address only that concern.” While true, that rule applies when the text of the measure is unambiguously broader than the specific situation that prompted the legislature to act. South Beach Marina, Inc. v. Dept. of Rev., 301 Or 524, 531, 724 P2d 788 (1986). However, we recently explained in Lake Oswego Preservation Society v. City of Lake Oswego, 360 Or 115, 129, 379 P3d 462 (2016), that “the fact that a statutory provision describes something in relatively broad terms does not always mean that the legislature intended the most expansive meaning possible.” Rather, “where there is evidence [that the] legislature had a more specific meaning in mind and that meaning is consistent with the text, [a] court may appropriately construe [the] text as such even if [the text] permits [a] more expansive interpretation.” Id. (explaining State v. Walker, 356 Or 4, 17, 333 P3d 316 (2014)).
This case is closer to Lake Oswego Preservation Society than South Beach Marina. For the reasons explained above, the text of subsection (3)(b) is, at a minimum, ambiguous. It permits (if not requires) a narrower reading than the majority gives it, as does the context. In this situation, the interpretative rule stated in South Beach Marina is inapplicable. Applying that rule here results in our not giving effect to the clear intent expressed in the legislative history. Accordingly, I would hold that the question whether a person is “engaging in * * * passive resistance” within the meaning of ORS 162.247(3)(b) turns on two issues: (1) the nature of the resistance and (2) the reason for it. The resistance must *348 be peaceable or passive, and reason for it must be to express a position on a governmental or other policy choice.
The majority raises one final concern. It notes that, if the phrase “passive resistance” is interpreted to apply only to the specific examples set out in the legislative history, the exception would be subject to a claim of viewpoint discrimination. That is, if the legislature granted an exception only to those people who engaged in passive resistance to oppose government action but not to those who engaged in the same activity to support it, the exception would imper-missibly favor one viewpoint over another. That same concern presumably led the Court of Appeals to define “passive resistance” by reference to “specific acts or techniques that are commonly associated with governmental protest or civil disobedience” rather than points of view. See State v. Patnesky, 265 Or App 356, 366, 335 P3d 331 (2014).
I agree with the majority that the Court of Appeals’ solution to that problem—defining passive resistance by reference to acts or techniques—seems artificial and, more importantly, may be too narrow. However, in my view, the majority’s interpretation of passive resistance is too broad. To save the exception for passive resistance, the majority sacrifices the prohibition against refusing to comply with the lawful order of a peace officer. In my view, we need not interpret “passive resistance” to include all passive or peaceable noncompliance, as the majority does, to avoid a claim of viewpoint discrimination. It is sufficient to say that the phrase “passive resistance” applies to peaceable or passive noncompliance taken to express a position on a governmental or other policy. Defining the reason for passive noncompliance neutrally avoids the risk of viewpoint discrimination that rightly concerns the majority.
Moreover, defining “passive resistance” more narrowly than the majority does gives effect to the legislature’s intent that “passive resistance” turns on both the nature of the resistance (passive or peaceable) and the reason for the resistance (to express a position regarding a governmental or other policy). Under the narrower interpretation, a driver who passively declines to provide his or her driver’s license because the license is suspended will violate the prohibition *349 against refusing to comply with the lawful order of a peace officer. See ORS 162.247(l)(b). However, under the majority’s interpretation, that driver would have a complete defense to a charge of violating the statute since, as the majority interprets “passive resistance,” the reason for noncompliance is irrelevant. Under its interpretation, all that matters is whether the noncompliance is peaceable.
To be sure, if “passive resistance” turns not only on the nature of the act but also the reason for it, the trier of fact will have to determine the reason a defendant declined to comply with an officer’s request. However, we frequently ask the trier of fact to make that sort of factual determination. For instance, we ask juries to decide why an employer discharged an employee. An otherwise permissible discharge can become impermissible depending on the reason for the employer’s act. Similarly, the legislature asks juries to decide why a defendant committed an assault, and it enhances the penalty if the defendant assaulted a victim because of the victim’s actual or perceived membership in a protected class. See State v. Plowman, 314 Or 157, 161-62, 838 P2d 558 (1992) (upholding that reason for enhancing the penalty against a claim that the statutory scheme was vague and thus incapable of consistent application). Asking juries to decide why a defendant declined to comply with an officer’s request follows that familiar pattern.
In this case, the state concedes that, if “passive resistance” turns on why the defendant declined to comply with the officer’s orders, there was evidence from which jury could have found that he did so to express a position on a governmental or other policy. Given the state’s concession, I agree with the majority that the Court of Appeals decision should be reversed and the case remanded for further proceedings. Accordingly, I concur in the judgment.
Landau and Brewer, JJ., join in this opinion concurring in the judgment.

 The issue in this ease arises in an odd posture. The trial court refused to give defendant’s requested instruction: “If you find that [defendant] engaged in activity that would constitute * * * passive resistance then you should find [defendant] not guilty of Interfering with a Peace Officer.” The state has not argued that that instruction was incorrect, and the issue has become whether the trial court’s instructional ruling should be affirmed because there was no evidence from which a reasonable juror could have found that defendant engaged in passive resistance. That, in turn, has led to an inquiry into what “passive resistance” means.
*340 One might question, however, the terms of the requested instruction. Within a single encounter, a defendant may engage in multiple acts that could give rise to separate charges of interfering with a peace officer. Some of those acts may be active; others, passive. Contrary to the assumption that underlies the requested instruction, even if one of those acts could constitute passive resistance, it does not necessarily follow that none of those acts would constitute interfering with a peace officer. However, that is what the instruction literally and, in my view, incorrectly said.

 The explanation runs as follows. As amended by the subcommittee on May 4,1999, subsection (3) provided that the prohibition against interfering with a police officer “does not apply in situations in which the person is engaging in activity that would constitute resisting arrest under ORS 162.315.” The definition of resisting arrest in ORS 162.315 does not include “passive resistance”; rather, it expressly excludes it. See ORS 162.315. It follows that, when the subcommittee provided on May 4 that “engaging in activity that would constitute resisting arrest under ORS 162.315” was the sole defense to the crime of interfering with a police officer, that defense did not include engaging in “passive resistance.” Put differently, Representative Bowman correctly recognized that the May 4 amendment “change [s] current law so that—so that passive resistance or civil disobedience is now prohibited [by ORS 162.247(1)].”

 For that reason, the state’s argument that passive resistance is a subset of resisting arrest is not well taken. There would have been no reason to add “passive resistance” as an exception to ORS 162.247(1) if the state were correct.

 On May 4, 1999, Representatives Mannix and Prozanski had expressed their understanding of the 1997 legislation. Ordinarily, a legislator’s views on the meaning of an existing statute have little, if any, probative value. Brown v. SAIF, 361 Or 241, 269, 391 P3d 773 (2017). However, the May 6, 1999, amendment restored the concept of passive resistance that the legislature had enacted in 1997 and that Representatives Mannix and Prozanski had discussed on May 4, 1999. For that reason, Representative Mannix and Prozanski’s description of that phrase on May 4 bears, on its meaning.